## ALLEN, ADMR., *v.* DEARDOFF ET AL.

*Equitable trusts — Continuing or subsisting and constructive or resulting trusts — Limitation of action to enforce — Wife purchases realty but husband named grantee — Descent and distribution.*

1. To constitute a continuing or subsisting trust against which the statute of limitations will not run, it must be a direct trust of the kind belonging exclusively to the jurisdiction of a court of equity, and the question must arise between the trustee and the *cestui que trust.*
2. Where a wife purchases real estate with her own money and the title is taken in the name of the husband, a constructive or resulting trust arises in favor of the wife.
3. In such case, after the death of the husband, and upon discovery by the widow of the fact that the property is in the husband's name, a cause of action arises in favor of the widow to enforce the trust, and if not brought for more than ten years thereafter, unless relieved by mental incapacity, all rights based on such trust are barred by lapse of time.

(Decided June 21, 1921.)

APPEAL: Court of Appeals for Warren county.

*Mr. Frank Brandon,* for plaintiff.
*Mr. W. G. Thompson,* for the heirs of Judith Amanda Dumbacher.
*Mr. Joseph T. Harrison,* for the heirs of George Dumbacher.

HAMILTON, P. J. The plaintiff, as administrator of the estate of Judith Amanda Dumbacher, deceased, brings this action asking the direction of the court as to the disposition of the proceeds of the sale of two farms, one of 110 acres and one of 59 acres, sold by him as such administrator, said proceeds being in his hands for distribution.

It appears that George Dumbacher and Judith Amanda Dumbacher were married in 1886 and lived in a modest home in Springboro, Ohio, the title to which was in the name of the husband. Dumbacher was a cobbler by trade. At this time the wife was the owner of an interest in two tracts of farm land, one consisting of 85 acres and another of 15 acres, her separate property. Shortly after their marriage, the wife sold her interest in the larger tract for about $6,000, and insisted on putting the money back into farm land, although urged to otherwise invest it. With the advice and cooperation of one Daniel Deardoff, an old friend of the family, and, at the wife's solicitation, the two farms, the proceeds of which are in question, were purchased, the one of 110 acres for $4900, and the other of 59 acres for $2437. Not having sufficient funds to make payment in full, a mortgage of $1,000 was placed on one of the farms purchased, and it was suggested by the wife that she could dispose of her interest in her small 15-acre tract for a sum sufficient to discharge the mortgage; and this was later done. The title to the two tracts of farm land purchased was taken in the name of the husband alone, George Dumbacher. This was in 1892. The deeds were recorded and the property was placed on the tax duplicate in the name of the husband, and he handled the land as his own. In January, 1909, the husband died intestate, and without issue, and his estate was administered and settled, it not being necessary to dispose of the land. A few days after the death of the husband, the wife's attention was called by Daniel Deardoff, above re-

ferred to, to the fact that the deed was in the name of the husband and she was not mentioned therein. She expressed surprise at this and stated that she thought it was a joint deed, and stated she would see a lawyer and have it attended to. She took no action in the premises, enjoyed the income from the farms, and died intestate, and without issue, in November, 1919.

The contention here is between the heirs of Judith Amanda Dumbacher, deceased, and the heirs at law of the husband, George Dumbacher, deceased. It is contended by the heirs at law of Judith Amanda Dumbacher, deceased, that she furnished the money which purchased the farms in question, and that the husband having taken the title to himself there arose an implied or constructive trust in favor of the wife, and that the title descended to the heirs of George Dumbacher burdened with the trust; that by virtue of the trust they, the heirs of Judith Amanda Dumbacher, were entitled to the proceeds of the sale of the land. The heirs of the husband, George Dumbacher, contend that his title in the land was complete and that upon his death and the death of his wife, intestate, and without issue, the proceeds should go one-half to the heirs of the wife and one-half to the heirs of the husband, by virtue of Section 8577, General Code.

It requires no authority to support the proposition that to establish a trust proof must be clear and convincing. The evidence meets this requirement, and we are satisfied that the purchase money of these farms was the money of the wife, and the husband having taken the title to himself a con-

structive or resulting trust arose in favor of the wife. A difficult question in the case, however, is lapse of time as a bar. Two points are argued. First, that the trust arising is a continuing and subsisting trust, and time does not run, under the provision of Section 11236, General Code. Second, that at the time of the decease of the husband, when knowledge of the condition of the title was brought to the attention of the wife, she was mentally incapacitated and continued so up to her death, and, therefore, lapse of time would not affect her.

As to the first point, three things are necessary to constitute a trust, which will not be subject to the bar of the statute. First, it must be a direct trust. Second, it must be of the kind belonging exclusively to the jurisdiction of a court of equity. Third, the question must arise between the trustee and the *cestui que trust.* The only continuing and subsisting trust that may not be barred is one where the *cestui que trust* has no cause of action that he can bring until such time as the trust is terminated by lapse of time. (*Larwill* v. *Burke et al.,* 19 C. C., 449.) In the question before us there is no direct trust; the question does not arise between the trustee and the *cestui que trust.* If the wife was not charged with notice by reason of the public record of the deed and the tax duplicate, she had actual notice immediately after the death of her husband, and she could have brought her action at any time upon the discovery of the fact that the husband had taken the title to himself. There was no fixed time for the termination of the trust. It is, therefore, clear that many of the elements neces-

sary to make up a continuing and subsisting trust, that may not be barred, are lacking.

It appearing that the right of action to enforce the trust was subject to the bar, and it further appearing that the wife brought no action for more than ten years after the death of her husband, any rights based on the trust are barred by lapse of time, unless she is relieved by reason of her mental condition. When the statute of limitations begins to run against the intestate in his lifetime, it will run to its completion without interruption by the death. *Granger's Admr.* v. *Granger,* 6 Ohio, 35.

As bearing directly on the question of her mental capacity at the time notice was brought to her of the fact that the legal title was in the name of her deceased husband, we quote from the evidence of Daniel Deardoff, a witness called by the heirs at law of the deceased wife:

"Q. Did you have a conversation with Judith Amanda Dumbacher after his death?

"A. Yes.

"Q. Well, tell about that.

"A. About a week after George died, as near as I can recollect, she wrote me (I lived eight miles from her), she wrote to me to come out, and I went up, and says she 'I want you to look over these papers.' She got the papers down, I looked over them, read the deed; after I had read the deed, all over, I said, 'Manda, your name's not mentioned in this deed, at all;' and I said, 'It looks to me as if your name ought to be mentioned in the deed.' Says she, 'Is that so?' and I said 'Yes ma'am, it is.' She had always told my wife and me that it was a joint deed, and we supposed it was. And we read

it over. 'Well,' says she, 'I must attend to that.' And I says, 'Yes, you ought to attend to that.' And I says, 'You ought to have a lawyer to attend to that.' I says, 'I am no lawyer; and when do you think you will be able to go to Lebanon to have it attended to?' Says she, 'I may be able in a week.' I says, 'I will take you any time that you write me to, that you are able to come.' My wife at that time was an invalid; she had a paralytic stroke, and I could not just leave her any day. Some days she was better, sometimes worse. 'But any time you write to me and I am able to leave my wife, I will take you over to Lebanon and have this matter attended to.'

"Q. Was there anything said about who you were to see at Lebanon?

"A. Yes, I asked her what lawyer she wanted to see, and she said, 'Mr. Runyan.' She had always preferred Mr. Runyan, and I said, 'All right.' But she never wrote to me. Therefore I never brought her to Lebanon.

"Q. What was her physical and mental condition shortly after that?

"A. From all appearances, so far as I could judge, her mental condition at times appeared very bright; and other times it appeared very dull to me.

"Q. How long after that was it until you saw her again?

"A. I suppose a couple of months.

"Q. What would you say as to her condition at that time?

"A. She said she seemed to be worse.

"Q. How many times after that did you visit her before her death?

"A.   Well, I suppose a couple of times a year.

"Q.   What would you say as to her mental condition?

"A.   Well, I could see that she was gradually failing, not very rapidly, but I could see that she was losing her judgment."

The evidence adduced as to her incapacity, in addition to the above was confined in the main to her neglect of herself and her home and to her filthy habits. She executed a power of attorney to an agent to transact some of her business, and her capacity to do this was recognized by witnesses. She discussed with parties the making of a will.

On the whole, we are of opinion that her mental condition was not such as to relieve her from bringing her action within the time limited for the bringing of such action. This, she did not do. She might have disposed of the property by deed or by will, but she did not see fit to do so, and left the property for more than ten years in the same condition that she received it, the legal title in her husband.

A decree may be taken ordering the distribution of one-half to the heirs of the husband, George Dumbacher, and one-half to the heirs of the wife, Judith Amanda Dumbacher.

*Judgment accordingly.*

CUSHING and BUCHWALTER, JJ., concur.