PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-2350
_____

UNITED STATES OF AMERICA, ex rel. DONALD
PALMER

v.

C&D TECHNOLOGIES, INC.

Donald Palmer,
Appellant

_____

On Appeal from the United States District Court for the
Eastern District of Pennsylvania
(D.C. Civ. Action No. 2:12-cv-00907)
District Judge: Honorable Gene E. K. Pratter

_____

Submitted Under Third Circuit L.A.R. 34.1(a)
March 13, 2018

Before: JORDAN, KRAUSE, and GREENBERG, <u>Circuit
Judges</u>

(Filed: July 17, 2018)

Ross Begelman
Marc Orlow
Begelman & Orlow
411 Route 70 East, Suite 245
Cherry Hill, N.J. 08034

James B. Helmer, Jr.
Paul B. Martins
James A. Tate
Helmer, Martins, Rice &
Popham Co.
600 Vine Street, Suite 2704
Cincinnati, OH 45202

 Attorneys for Appellant

Paula C. Cedillo
Charles D. Ray
Thomas J. Finn
McCarter & English
185 Asylum Street
CityPlace I, 36th Floor
Hartford, CT 06103

Katelyn Gillece
Michael J. Glasheen
McCarter & English
1600 Market Street
Suite 3900
Philadelphia, PA 19103

 Attorneys for Appellee

_____

OPINION OF THE COURT

_____

GREENBERG, Circuit Judge.

In this action under the False Claims Act, 31 U.S.C. §§ 3729-3733 (2012), Donald Palmer ("Relator") settled his claim with defendant C&D Technologies, Inc. ("C&D"), thereby entitling Relator to reasonable attorneys' fees and costs. *Id.* § 3730(d)(2).[1] The parties, however, were unable to reach an agreement on attorneys' fees. In contesting the fees, both parties adopted unproductive tactics and strayed from professional etiquette, conduct that ultimately caused the District Court to proclaim that "[i]t is a hellish judicial duty to review and resolve disputed attorneys' fee petitions, particularly in cases, like this one, where the adversaries fan the flames at virtually every opportunity." App. 8. While Relator sought $3,113,530.50 in fees, the Court reduced that amount to $1,794,427.27.[2] Relator timely appealed from orders

_____

[1] Relator filed this action under seal and was able to prosecute the action when the Government declined to intervene. *See* 31 U.S.C. § 3730(b)(4)(B).

[2] Relator's total fee demand was $3,278,115.99, of which $3,113,530.50 was for statutory fees and the balance of $164,585.49 was for costs. The parties agree that costs owed to Relator amount to $164,585.49. Thus, that figure is not at issue in this appeal.

3

that the Court entered on April 25, 2017, and May 24, 2017, awarding fees and costs. We will remand on one narrow ground, but otherwise affirm the Court's orders in all other respects.

## I. FACTS

### A. Background

In this False Claims Act action, Relator claimed that C&D manufactured and shipped some 349 defective batteries to the United States government for use in intercontinental ballistic missile launch controls. In the summer of 2014, after some four years of litigation, the parties engaged in active mediation. Relator subsequently demanded a settlement of $1.5 million, plus fees and costs, and the negotiations ended without success.

Then, in the spring of 2015, Relator filed a Second Amended Complaint in which he expanded his demands for alleged damages to $30 million, or twenty times the amount of his initial demand. After the District Court denied cross-motions for summary judgment, the parties settled the case for $1.7 million, representing about six percent of the total amount that the Relator demanded in his Second Amended Complaint.

### B. Attorneys' Fees Dispute

As a statutory matter, the settlement made Relator a prevailing party under the False Claims Act, entitling him to an award of "*reasonable* attorneys' fees and costs." 31 U.S.C. § 3730(d)(2) (emphasis added). Although the parties settled the merits of the case, they were not able to agree on the fees

4

that Relator should recover. Initially Relator sought $2,367,904.85 in attorneys' fees as of December 31, 2015. As the District Court explained, "C&D responded that the reasonable fee amount should have been no more than about half that amount, arguing essentially that the case had been over-staffed and over-worked by the Relator's various sets of lawyers, and that the fee petition was based on the wrong hourly rates and included duplicative entries, inappropriate submissions such as for travel time, and, finally, that there should be a reduction of the amount awarded for degree of success, or rather, lack of success, given the modest settlement amount." App. 10.

According to the District Court, both parties' counsel were uncooperative and did not act in good faith:

> The Court repeatedly offered certain guidance for possibly bridging the chasm and directed the parties' counsel to exchange various pertinent information in an effort to minimize areas of disagreement. Counsel were equally slow to do so, and the hoped for exercise that the Court intended as a way to persuade counsel of the benefits of good faith and good sense achieved very little – other than to lead to an exchange [of] dueling briefs, innuendo and insults.

App. 10.

Relator responded to C&D's objections by increasing his fee demand to $3,278,115.99, or, as the District Court observed, "almost $1 million *more* than the fees [he] sought a year ago and almost twice the dollar amount of the settlement [he] reached." App. 11. Notably, Relator opted to apply hourly rates that he "extrapolated" from actual Community Legal Services ("CLS") rates and which were higher than those that he originally used to calculate his fee demand. App. 11.

C. The District Court's Rulings

In its decision, the District Court emphasized that it "was at all times well aware of who was doing what, to what possible end and [had] been entirely attentive to the at times puzzling performance of the professional duties of the lawyers." App. 11. The Court noted that its resolution of the fee award reflected its "hands-on contemporaneous evaluation (and necessary attendant factual findings) of the services performed and for which payment is sought." App. 11. It found that, "[i]n the main, . . . C&D's opposition to the fee petition adopts most of the Court's guidance as to, for lack of a better term, 'lawyer hours' and acceptable rates for various tasks undertaken." App. 11 n.6. It then proceeded to resolve the areas in dispute.

i. Hourly Rates

The parties and the District Court agreed that the rate issue was "best resolved by using primarily – if not exclusively – the rates promulgated by the Philadelphia office of Community Legal Services." App. 15 (citing *Maldonado v. Houstoun*, 256 F.3d 181, 187-88 (3d Cir. 2001) ("The fee

6

schedule established by [CLS] has been approvingly cited by the Third Circuit as being well developed and has been found by [the Eastern District of Pennsylvania] to be a fair reflection of the prevailing market rates in Philadelphia." (second alteration in original) (quotation marks and citation omitted)). The Court rejected Relator's "extrapolated" rates that were higher than the CLS rates because "the CLS rates promulgated in 2014 remain the actual current rates; neither CLS nor any court in any reported opinions that this Court has been able to locate have resorted to the 'extrapolation' technique now used by [Relator's] counsel." App. 16. Because the CLS rates provided a range—rather than a specific dollar amount—for reasonable hourly rates, the Court elected "to take an equitable approach" and "direct[ed] counsel to use for each time-keeper for whom a fee is sought and permitted an hourly rate at the mid-point of the applicable range." [3] App. 16.

## ii. Reasonableness of Hours Claimed

The District Court reduced Relator's recoverable attorney hours for, *inter alia*, depositions, document review, summary judgment motions, a motion for reconsideration, *Daubert* motions, and travel time expenses.

## 1. Depositions

---

[3] For example, the 2014 CLS rate range is $600 to $650 per hour for an attorney with twenty-five years or more of experience – thus, the hourly rate for Relator's attorneys who meet such criteria would be $625, the mid-way point between the low and high points of the CLS range.

In regard to depositions, C&D objected both to the number of hours involved in taking and preparing for depositions, as well as the number of attorneys attending some of those depositions on behalf of Relator. In its decision, the District Court remarked that during its various meetings regarding the fee dispute, it had "frequently addressed the matter of the crowd of counsel at the depositions and in preparation sessions for them." App. 17.

Based on previous guidance that it had issued to the parties, the District Court permitted Relator to receive fees for the twelve depositions that C&D specifically challenged, but limited those fees in each deposition to those generated by the Relator lawyer who actually did the questioning and one other Relator lawyer actually in attendance. The Court also allowed "[p]rep time compensation" for each deposition of one lawyer per deposition (*i.e.*, the lawyer who actually logged preparation time for the deposition), "up to a maximum of 1.75 preparation hours per hour of documented deposition time." App. 17. If less than 1.75 hours/deposition hour was recorded, then the lesser time value had to be used.[4]

2. Summary Judgment and
Reconsideration Motions

C&D identified more than 900 hours and more than $440,000 in fees submitted by Relator for: (1) filing a motion for summary judgment; (2) responding to C&D's motion for summary judgment; (3) arguing the motions; and (4)

---

[4] For example, for a three-hour deposition, up to 5.25 hours of prep time may be charged or the actual prep time logged, whichever is less.

8

responding to C&D's motion for reconsideration. The District Court stated that it "cannot avoid observing that the number of hours attributed to the Relator's own motion (284.15) comes within a day's worth of the number of hours counsel then charged for defending against the C&D opposing motion (291.20)." App. 19.

The District Court was troubled by this reality because "one would reasonably expect that at least a good portion of the work undertaken to plow the legal field for advancing a summary judgment motion would be (or at least should be) useful and usable for defending an opposing motion (or vice versa), especially for lawyers (such as those representing Relator here) with a self-proclaimed expertise in the controlling legal issues." App. 20. In regard to oral argument, the Court was "puzzled as to how Relator's counsel can call for compensation for 121.2 hours for this activity, slightly more than 48 times the length of the entire time in court for both parties' arguments, including pleasantries." App. 20. As to Relator's response to C&D's motion for reconsideration, the Court found that there was "no credible description as to why" counsel devoted some seventy-eight hours to "address[] the 5-page motion[.]" App. 21.

In the end, the District Court—based on its "knowledge of the issues and the briefs as well as having discretion to apply its knowledge gleaned from managing the case from start to finish"—allowed: (1) sixty percent of the time claimed for preparation of Relator's motion for summary judgment; (2) fifty percent of the time claimed for preparation of Relator's opposition to C&D's motion for summary judgment; (3) thirty percent of the time claimed for Relator's reply brief; (4) a total of 42.5 hours for two lawyers to prepare for and one lawyer to

9

conduct oral argument; and (5) twenty-five hours to respond to C&D's motion for reconsideration.  App. 20-21.

### 3. *Daubert* Motions

C&D challenged as unreasonable Relator's claim for 203 hours and more than $85,000 in fees in connection with Relator's *Daubert* motion and his opposition to two such motions filed by C&D.[5]  The District Court agreed with C&D. Accordingly, the Court reduced the charges by $58,106.56.

### 4. Travel Time

Relator sought fees of 247.70 hours and $129,526.75 for travel time logged by two of Relator's attorneys based in Cincinnati.  C&D objected and posited that the travel time be reduced by half.  However, the District Court recognized that this Court has held that, "under normal circumstances, a party that hires counsel from outside of the forum of the litigation may not be compensated for travel time, travel costs, or the costs of local counsel."  App. 22 (quoting *Hahnemann Univ. Hosp. v. All Shore, Inc.*, 514 F.3d 300, 311 (3d Cir. 2008)). Thus, following *Hahnemann*, the Court held that, "to the extent that Relator's out-of-forum counsel seek reimbursement for travel time to and from the forum – for instance, for court appearances – that travel time will not be reimbursed."  App. 23.

However, the District Court treated "depositions held outside of the forum differently, as even counsel located in the

---

[5] *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 113 S.Ct. 2786 (1993).

10

forum area would have incurred travel time for those events." App. 23. It explained:

> [W]hile the Court is disinclined to allow a claim for multiple lawyers to be traveling on someone else's ticket or for any lawyer to charge 'full freight' for any travel, the Court is equally mindful that but for a professional obligation the lawyer likely would not be traveling at all, in which case the lawyer at least theoretically would have been able to enjoy other pursuits. Thus, some time-oriented compensation for travel time is fair for non-forum events in the case, though the Court is disinclined to authorize companion traveling for events ultimately attended by multiple counsel.

App. 23 (footnote omitted). Noting that neither party had provided evidence of practices relating to fees for travel time in the local community, the Court held that, "[b]ecause the burden is squarely on Relator to show that the fees he requests are reasonable, Relator will bear the weight of this failure." App. 24. Accordingly, the Court ordered that travel time at fifty percent would be allowed for two attorneys to attend events occurring outside the forum area.

### iii. "Success" or "Benefits Achieved" Factors

11

C&D argued for a twenty percent reduction of the fee award based on Relator's lack of success. *See Hensley v. Eckerhart*, 461 U.S. 424, 436, 103 S.Ct. 1933, 1941 (1983) (holding that the "degree of success obtained" is "the most critical factor" in deciding whether to adjust a fee award). The District Court recognized that "Relator and his counsel achieved only very modest results: a $1.7 million monetary settlement payment which was about 6% of the Relator's demand in his Second Amended Complaint and roughly $200,000 more than the first settlement demand at the start of the case in 2014." App. 25. The Court concluded that, "after balancing the arguments, the applicable burdens, the Court's knowledge of the case and counsel's conduct, and the foregoing reductions, . . . the appropriate exercise of discretion is to further reduce the fee to be awarded to 90% of the permissible fee calculated once the reductions imposed in this ruling have been applied." App. 26. Accordingly, the Court reduced the fee by ten percent.

## D. Judgment and Appeal

In light of the District Court's decision, the parties filed a joint submission regarding Relator's attorneys' fees on May 23, 2017. The parties agreed that for the purposes of the fee award, the Court could use $1,794,427.27 for fees and $164,585.49 for costs, the sum of which was $1,959,012.76. The Court entered judgment on the basis of this stipulation. Relator timely appealed from the fee award, arguing that he is entitled to $564,599.12 in additional fees.

## II.  DISCUSSION[6]

On appeal, Relator contends that the District Court erred by reducing the billable rates and portions of the fee award that relate to various motions, depositions, and travel expenses.[7] For the reasons below, we will remand this case only for the Court to decide whether the "fees on fees" that Relator seeks to collect are reasonable and whether they should be reduced based on the results obtained.  We will affirm the Court's judgment in all other respects.

### A.  Awards Below C&D's Suggestions

The District Court reduced the hourly rates and attorneys' hours related to both travel expenses and Relator's reply brief to an amount below that that C&D suggested.  We review *de novo* to determine whether the Court was able to reduce the attorneys' fees beyond the reductions suggested by C&D.  *See Planned Parenthood of Cent. N.J. v. Att'y Gen. of N.J.*, 297 F.3d 253, 265 (3d Cir. 2002) ("We review *de novo* the standards and procedures applied by the District Court in determining attorneys' fees, as it is a purely legal question.").  Relator contends that the Court acted *sua sponte* and committed reversible error.  We disagree and find that the

---

[6] The District Court had jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and 31 U.S.C. § 3732(a).  We have jurisdiction pursuant to 28 U.S.C. § 1291.

[7] On appeal, Relator does not challenge the District Court's decision to reduce the fee award by ten percent due to the minimal benefits that counsel achieved or its decision to limit recoverable document review time to 185 hours.

13

Court appropriately exercised its discretion in doing so.

According to Relator, the District Court's discretion to award attorneys' fees is restricted by the parties' positions of what is reasonable, and it therefore cannot award an amount below that which the party opposing the fees contends is reasonable. He relies on *Bell v. United Princeton Properties, Inc.*, 884 F.2d 713 (3d Cir. 1989), for his proposition that "a court may not sua sponte reduce the amount of the award when the defendant has not specifically taken issue with the amount of time spent or the billing rate[.]" Appellant Br. at 8-9 (quoting *Bell*, 884 F.2d at 720). Relator contends that this Court prohibits fee award reductions that were not sought by the opposing party for two reasons:

> In so deciding, we reasoned first that *sua sponte* reduction of a fee request deprives the fee applicant of her entitlement to . . . offer evidence in support of the reasonableness of her request. And second, because statutory fee litigation is adversarial litigation, there is no need to allow the district court to reduce a fee award on its own initiative.

Appellant Br. at 10 (quoting *Bell*, 884 F.2d at 719) (citation and internal quotation marks omitted).

Here, the District Court reduced, in three instances, Relator's fee award by more than the amount suggested by

14

C&D. First, C&D argued before the Court that the hourly rates on the high end of the CLS ranges were adequate to compensate Relator, but the Court determined that the hourly rate would constitute the midpoint—rather than the high end—of the CLS rate range. Second, C&D sought a reduction of fifty percent for travel time to the forum by counsel based outside the forum. The Court disallowed all such travel time because it was bound by *Hahnemann*.[8] Third, C&D proposed that 50 hours would be sufficient for Relator to prepare an adequate reply brief. The Court, however, allowed recovery of

---

[8] Relator relies on, *inter alia*, *Planned Parenthood of Central New Jersey* for the proposition that "there is no blanket prohibition against compensating travel to the forum[.]" Appellant Br. at 13. In *Planned Parenthood*, we stated that "travel time is an out-of-pocket expense under § 1988 that is generally recoverable 'when it is the custom of attorneys in the local community to bill their clients separately for [it].'" 297 F.3d at 267 (alteration in original) (quoting *Abrams v. Lightolier Inc.*, 50 F.3d 1204, 1225 (3d Cir. 1995)). Thus, *Planned Parenthood* applies to *local* counsel, *see id.*, while *Hahnemann* prohibits travel expenses for "counsel from outside of the forum of the litigation," 514 F.3d at 312. Here, Relator sought fees for travel time logged by counsel from outside the forum: accordingly, *Hahnemann*—and not *Planned Parenthood*—is on point. Regardless, even under *Planned Parenthood*, "a court must look to the practice in the local community" to determine whether travel time should be compensated at the full rate. 297 F.3d at 267. Here, Relator—who has the burden to prove that the fees are reasonable, *see Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990)—has not presented any evidence regarding the customary practice for the billing of travel time in the local community.

thirty percent of the 127 hours that Relator's attorneys billed, or thirty-eight hours.

We reject Relator's argument and affirm the District Court's reduction of its fee award in the aforementioned instances by more than had been argued for by C&D. The Court's determination of reasonable hourly rates and the reduction of fees for the summary judgment reply brief and travel time cannot be characterized as *sua sponte* rulings as Relator suggests. Clearly, C&D objected to the fees at issue given that Relator argues the Court improperly reduced fees beyond what had been suggested by C&D in its objection – as such, the Court did not act *sua sponte*. The prohibition against the reduction of attorneys' fees occurs only when the amount remains "uncontested" – which is not the case here. *Cunningham v. City of McKeesport*, 753 F.2d 262, 267 (3d Cir. 1985), *vacated on other grounds*, 478 U.S. 1015, 106 S.Ct. 3324 (1986); *see also Bell*, 884 F.2d at 720 ("[T]he two justifications for disallowing sua sponte fee reductions . . . mandate only that a judge not decrease a fee award based on factors *not raised at all* by the adverse party." (emphasis added)).

Furthermore, Relator does not cite any decision that requires a district court to award at a minimum the amount of attorneys' fees that the opposing party contends is reasonable, and we decline to make such a ruling today. Rather, our case law provides district courts with substantial discretion to determine what constitutes reasonable attorneys' fees because they are "better informed than an appellate court about the underlying litigation and an award of attorney fees is fact specific[.]" *Pub. Interest Research Grp. of N.J., Inc. v.*

16

*Windall*, 51 F.3d 1179, 1184 (3d Cir. 1995); *see also Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990) ("Once the adverse party raises objections to the fee request, the district court has a great deal of discretion to adjust the fee award in light of those objections."). Indeed, in *Bell*—the very case on which Relator relies—we recognized that "the type of reduction made by the court [need not] be exactly the same as that requested by the adverse party" so long as: (1) "the fee applicant is given sufficient notice to present his or her contentions with respect to the reduction that the district court ultimately makes"; (2) "any reduction is based on objections actually raised by the adverse party"; and (3) "the district court . . . provide[s] a concise but clear explanation of its reasons for the fee award." 884 F.2d at 721-23 (internal quotation marks omitted). Accordingly, we conclude that, in making an award of attorneys' fees that abides by those criteria, a court does not *per se* abuse its discretion when its award is below the amount that the opposing party accepts as reasonable.

Each of the District Court's reductions meets these benchmarks. C&D filed objections to the hourly rates, travel time, and summary judgment hours, which put Relator on notice as to those very topics. C&D's underlying objections—that Relator's proposed rates superseded the CLS rates, that counsel from outside the forum is not typically compensated for travel, and that Relator's counsel billed an inconceivable number of hours for the summary judgment reply brief—each motivated the Court's decisions.[9] And the Court permissibly

---

[9] *See, e.g.*, App. 16 ("Mr. Palmer's lawyers' fee application will be adjusted so that only the published 2014 CLS rates may be used."); App. 20 ("[O]ne would reasonably expect that at least a good portion of the work undertaken to plow the legal

17

relied on its knowledge of the case and the parties, in addition to what it regarded as the inflated amount of hours billed by Relator's counsel, to reach its conclusions.[10] *See Bell*, 884 F.2d at 721 ("In determining whether the fee request is excessive in light of particular categorical contentions raised by the adverse party, and in setting the amount of any reduction, the court will inevitably be required to engage in a fair amount of 'judgment calling' based upon its experience with the case and its general experience as to how much time a case requires.").

Furthermore, here, after rejecting Relator's unsubstantiated "extrapolated" rates that were in excess of the published CLS rates, the District Court was within its discretion to apply the mid-point of the CLS rates for a "reasonable" hourly rate. *See Loughner v. Univ. of Pittsburgh*,

---

field for advancing a summary judgment motion would be (or at least should be) useful and usable for defending an opposing motion (or vice versa), especially for lawyers (such as those representing Relator here) with a self-proclaimed expertise in the controlling legal issues."); App. 22 (finding that the Court of Appeals for the Third Circuit ordinarily disallows compensation for travel costs for counsel from outside the forum).

[10] *See, e.g.*, App. 20 ("Thus, exercising its knowledge of the issues and the briefs as well as having discretion to apply its knowledge gleaned from managing the case from start to finish, the Court will permit a claim of 60% of the current claim for the written work recorded for Relator's motion, 50% of the time charged for opposing the C&D summary judgment motion, and 30% of the time recorded for the Relator's 'Reply Brief.'").

260 F.3d 173, 180 (3d Cir. 2001) ("Having rejected the prevailing party's evidence of rates, the District Court was free to affix an adjusted rate."). In regard to travel time, the Court properly adhered to our binding legal precedent and disallowed any travel time. *See Hahnemann Univ. Hosp.*, 514 F.3d at 312.[11] And it is logical to assume that the Court applied a lower multiplier to the hours logged for the preparation for the reply brief than the main brief because Relator's reply brief was significantly shorter and simpler than the main brief.[12] *See Bell*, 884 F.3d at 721 ("In order to exercise its discretion fairly, a district court needs flexibility in deciding whether to reduce a fee request and, if so, by how much.").

Accordingly, the District Court did not err by reducing Relator's fee award below the amount sought by C&D.

---

[11] *Hahnemann* provides for a narrow exception to this rule "where forum counsel are unwilling to represent plaintiff[.]" 514 F.3d at 312 (quoting *Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 426 F.3d 694, 710 (3d Cir. 2005)). This exception is not applicable here because Relator has not produced any evidence that local counsel was unwilling to take on the case if not compensated for the travel time.

[12] Relator's attorneys originally billed 127 hours for the reply brief. The seventy percent reduction allowed Relator to recover reply brief fees for thirty-eight hours. *Id.* This reduction was completely reasonable. Regardless, the amount of fees that Relator contends were *sua sponte* reduced with respect to the reply brief beyond the amount that C&D argued for in the context of this case was de minimis – only $4,304.48 out of nearly $1.8 million in total attorneys' fees.

19

B.  Deposition Fees

Relator contends that the District Court improperly limited the deposition-related fees that he can recover.  We disagree.  "We review the District Court's attorneys' fees award for abuse of discretion . . . ." *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 299 (3d Cir. 2005).  An abuse of discretion "can occur if the judge fails to apply the proper legal standard or to follow proper procedures in making the determination, or bases an award upon findings of fact that are clearly erroneous." *Id.* (quoting *In re Cendant Corp. PRIDES Litig.*, 243 F.3d 722, 727 (3d Cir. 2001)); *accord Halley v. Honeywell Int'l, Inc.*, 861 F.3d 481, 488 (3d Cir. 2017).

In a statutory fees case, "[t]he party seeking attorney's fees has the burden to prove that its request for attorney's fees is reasonable" by "submit[ting] evidence supporting the hours worked and rates claimed."  *Rode*, 892 F.2d at 1183 (citation omitted).  "[T]he party opposing the fee award then has the burden to challenge, by affidavit or brief with sufficient specificity to give fee applicants notice, the reasonableness of the requested fee."  *Id.*  Once the challenging party does so, "the district court has a great deal of discretion to adjust the fee award in light of those objections."  *Id.*

In instances where a district court reduces an award by a particular percentage or amount, we have stated:

> [D]istrict courts, in awarding attorneys' fees, may not reduce an award by a particular percentage or amount (albeit for justifiable reasons) in an arbitrary or

20

indiscriminate fashion. If the court believes that a fee reduction . . . is indicated, *it must analyze the circumstances requiring the reduction and its relation to the fee, and it must make specific findings to support its action.*

*Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 196 (3d Cir. 2000) (second alteration in original) (citation omitted).

As an initial matter, we conclude that Relator met his burden by submitting some evidence to support his requested deposition fees, and C&D satisfied its burden to challenge the reasonableness of those fees with sufficient specificity. Regarding the reasonableness of the fees, Relator contends that the District Court acted in an arbitrary and indiscriminate manner by limiting the deposition fees: (1) to the time at deposition for the Relator attorney who did the questioning and one additional attorney, and (2) "prep time" compensation for one lawyer who actually logged preparation time for each deposition, up to a maximum of 1.75 preparation hours per hour of documented deposition time. C&D counters that those limitations are reasonable because, prior to "filing of the fee petition, the parties and the court engaged in an iterative process . . . [where] the district court provided guidance to the parties as to what would be considered a reasonable approach, such as 1.75 hours of preparation time per deposition hour and the time spent at the deposition itself for two attorneys, unless Relator could demonstrate that additional attorneys made material contributions to the deposition." Appellee Br. at 31.

The District Court's decision to limit fees recoverable

21

for time at depositions to two attorneys is reasonable in light of its concern that "the matter of the crowd of counsel at the depositions" had to be addressed. App. 17. Indeed, the record reflects that upwards of four attorneys on behalf of Relator attended straightforward depositions, and Relator failed to substantiate the need for the excess attorneys to the Court (and does not attempt to do so on appeal). Accordingly, the Court did not abuse its discretion in issuing that limitation.

Nor did the District Court abuse its discretion when it limited recoverable preparation time to one attorney and up to a maximum of 1.75 preparation hours per hour of documented deposition time. The record reflects that Relator seeks to recover an unreasonable amount of deposition fees, including, among other things: (1) $37,609 for deposing two individuals over five hours; (2) $64,412 for deposing a Rule 30(b)(6) witness for seven hours; (3) $26,927 for deposing two other individuals for 6.2 hours; and (4) $169,120 for seven more depositions. In total, Relator claims nearly $300,000 in fees to prepare for and conduct twelve depositions that averaged about 5.25 hours each. Relator, who has the burden to show that the fees are reasonable, does not provide an argument on appeal to substantiate those exorbitant costs, nor did it to the District Court. The Court explained that it had given the parties "prior express guidance on the issue of claiming fees for time devoted to depositions" throughout the litigation. App. 17; *see also Bell*, 884 F.2d at 721 (noting that judges may rely upon their experience with a case when assessing the reasonableness of a fee request). The Court credited C&D's challenges, and it noted that "Relator … failed to demonstrate why any greater amount of preparation time should be allowed." App. 18. Thus, it did not abuse its discretion when it limited Relator's request for deposition fees.

22

C. Summary Judgment, Reconsideration, and *Daubert* Motion Fees

As a threshold matter, Relator contends that C&D did not meet its burden to notify him of its challenges to the fees relating to the summary judgment, reconsideration, and *Daubert* motions. According to him, C&D made a fatal mistake by not submitting affidavits challenging those fees. However, he relies on *Bell*, which provides that an objecting party need only submit an affidavit "to the extent the challenger seeks to raise a factual issue—for example, a claim that the fee applicant's billing rate was lower than claimed[.]" Appellant Br. at 19 (quoting *Bell*, 884 F.2d at 720).

C&D does not challenge any of the underlying facts supporting Relator's claim for legal fees, *i.e.*, the billing rates and number of hours worked. Rather, C&D contends that said rates and hours worked were not reasonable. In such instances, *Bell* makes clear that "parties need not submit counter-affidavits challenging the fee request, so long as they submit briefs that identify the portion of the fee request being challenged and state the grounds for the challenge with sufficient specificity to give the fee applicants notice that they must defend the contested portion of their fee petition." 884 F.2d at 715. C&D clearly meets this standard because its brief and exhibits before the District Court specifically challenge, *inter alia,* each of Relator's requested fees, thereby putting Relator on notice that his fee request was excessive.

Rather, as with the challenges to the deposition fees, we must assess whether the District Court "provide[d] a concise but clear explanation of its reasons for the fee award" in order

23

to apply the abuse of discretion standard. *Id.* at 722-23 (quoting *Hensley*, 461 U.S. at 437). The question on appeal therefore is whether the Court properly analyzed the circumstances of the case and then properly explained its reasoning with respect to the fees associated with the summary judgment, reconsideration, and *Daubert* motions.

The District Court permitted sixty percent of Relator's claim for the written work recorded for Relator's summary judgment motion, fifty percent of the time charged for opposing C&D's summary judgment motion, and thirty percent of the time recorded for the Relator's reply brief.[13] It did so on the basis that: (1) "the number of hours attributed to the Relator's own motion (284.15) comes within a day's worth of the number of hours counsel then charged for defending against the C&D opposing motion (291.20)"; (2) expert attorneys "in the specific legal fields at issue in this case would [not] need to log so many hours on supposedly familiar issues"; (3) "one would reasonably expect that at least a good portion of the work undertaken to plow the legal field for advancing a summary judgment motion would be (or at least should be) useful and usable for defending an opposing motion (or vice versa)"; and (4) the Court had significant knowledge of the case "gleaned from managing the case from start to finish[.]" App. 19-20. The Court's reasoning was therefore more than adequate and far from being the product of an abuse of

---

[13] Relator's attorneys billed more than 900 hours for summary judgment proceedings, including: 284.15 hours to draft and file Relator's motion for summary judgment; 291.20 hours to draft and file an opposition to C&D's motion for summary judgment; and 127 hours to draft and file a reply brief in support of his motion for summary judgment.

discretion.

Regarding the motion for reconsideration, Relator's attorneys billed approximately seventy-eight hours to respond to C&D's motion. App. 21. The District Court adopted C&D's recommendation and reduced it to twenty-five hours, explaining that: (1) motions for reconsideration are themselves rarely successful and are granted only under very narrow circumstances, making it relatively easy to respond to them; and (2) C&D's motion for reconsideration was only five pages – accordingly, it could not possibly have reasonably taken seventy-eight hours to prepare a response. Id. This explanation is sufficient to warrant the reduction and meet the "concise but clear" standard. As with its determination with the summary judgment fees, the Court's decision could not possibly be categorized as being the product of an abuse of discretion. *See Rite Aid Corp.*, 396 F.3d at 299.

With respect to the fees related to the *Daubert* motions, the District Court adopted C&D's proposal to reduce these fees by $58,106.56, stating that "[t]he Relator's counsel has not persuaded the Court that C&D's challenges to the fees attributed to the *Daubert* activities are not valid."[14] App. 21. In other words, the Court explained that C&D met its burden by adequately challenging Relator's excessive fee request as it relates to the *Daubert* motions, and Relator failed to defend the reasonableness of his request in light of C&D's challenge. That makes sense given that Relator's only response to C&D's

---

[14] Relator's attorneys billed more than 200 hours and $85,000 for briefs regarding *Daubert* motions: 100 hours to file its lone *Daubert* motion, and 103 hours to draft and file oppositions to C&D's two *Daubert* motions.

challenge was that the parties had to speculate about the relationship between C&D's proposed hours and the real world of work actually done on the case, and that C&D's challenges did not give Relator sufficient notice to rebut the claimed reductions. Therefore, the District Court's reduction of Relator's fee request for *Daubert* activities was not an abuse of discretion.[15]

## D. Fees on Fees

Finally, Relator argues that he is owed the fees incurred in litigating this fee petition before the District Court and this Court. *See Prandini v. Nat'l Tea Co.*, 585 F.2d 47, 53 (3d Cir. 1978) ("[T]he time expended by attorneys in obtaining a reasonable fee is justifiably included in the attorneys' fee application, and in the court's fee award."). Relator raised this issue before the District Court, and there is precedent for "fees on fees" under *Prandini*. However, the Court did not rule on the reasonableness of these fees, including the extent to which the level of Relator's attorneys' success (or lack thereof) affects the award. We decline to address this "fees on fees" issue in the first instance on appeal. Rather, the District Court shall do so on remand due to its familiarity with the case and the fact that it has been "managing the case from start to finish[.]" App. 20; *see Hensley*, 461 U.S. at 437, 103 S.Ct. at 1941 ("We reemphasize that the district court has discretion in determining the amount of a fee award. This is appropriate in view of the district court's superior understanding of the litigation and the desirability of avoiding frequent appellate

---

[15] As with the deposition fees, we agree with the District Court that a reduction of the excessive *Daubert* motion related fees is in order.

review of what essentially are factual matters."); *Citizens Council of Del. Cty. v. Brinegar*, 741 F.2d 584, 594 (3d Cir. 1984) ("The determination of whether attorneys' fees are reasonable is for the district court . . . ."); *Ursic*, 719 F.2d at 675 ("Absent error of law, determination of the reasonableness of the fee is for the district court—both in the original instance and on remand from this court.").

The District Court should proceed in two steps: (1) as with all fee petitions, it must first determine whether the fees on fees are reasonable; and (2) once the reasonability analysis is complete, the Court must consider the success of the original fee petition and determine whether the fees on fees should be reduced based on the results obtained. *See Maldonado*, 256 F.3d at 188 (applying the limited success fee reduction rationale to the court's consideration of fees generated in the litigation of a fee petition). Notably, the reduction analysis for the fees generated from litigating the fee petition is independent from the reduction analysis applied to the underlying litigation. *See Institutionalized Juveniles v. Sec'y of Pub. Welfare*, 758 F.2d 897, 924 (3d Cir. 1985) ("[T]he fee reduction rationale of *Hensley*, because it is intended to ensure the award of a reasonable fee in light of the results obtained, applies by force of the Court's reasoning to fees generated in the litigation of a fee petition, and compels us to treat the fee petition litigation as a separate entity subject to lodestar and *Hensley* reduction analysis.").

## III. CONCLUSION

We will not close this opinion without mentioning that although we vacate and remand the case to the District Court

with respect to the "fee on fees" issue we recognize and commend the District Court for its admirable handling of this case which by any standard was quite difficult.  For the aforementioned reasons, we will vacate and remand for the District Court to decide whether the "fees on fees" that Relator seeks to collect are reasonable and whether they should be reduced based on the results obtained.  We otherwise will affirm the Court's orders in all other respects.